C. W. Boxwell for use of Sigurd A. Thorsen, Appellant, v. Lion Oil Company, Appellee.

Gen. No. 32,642.

Opinion filed October 3, 1928.

FREDERICK A. GARIEPY and OWEN RALL, for appellant.

CHARLES E. CARPENTER, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

The record discloses that Sigurd A. Thorsen obtained a judgment by confession against C. W. Boxwell, in the municipal court of Chicago, for the sum of $1,237 and costs.

That an execution on said judgment issued in due course and was returned *nulla bona* and no part satisfied June 7, 1926.

On March 17, 1927, plaintiff sued out a writ of garnishment against defendant Lion Oil Company, a corporation, as garnishee, and filed certain interroga-

tories to be answered by said garnishee, which were answered in substance denying that the garnishee owed any money to Boxwell or had in its possession property of any kind belonging to him. Issue was joined on the answers and a trial before a judge of the court resulted in a finding and order that Boxwell, for the use of Thorsen, take nothing by his garnishee suit and that defendant, Lion Oil Company, be released and discharged as such garnishee. From the latter order Boxwell for use of Thorsen prosecutes this appeal.

It appears from the evidence that the "Standard Tire Service Company" operated an oil filling station at Ohio and La Salle Streets in Chicago, and that "Boxwell's Service incorporated" succeeded the Standard Tire Service Company in operating said oil filling station; that the land on which the oil station stood was owned by one Palmer and that the Tire Company originally leased the property from Palmer and that the Boxwell Service Company succeeded to the right and title of the Standard Tire Service Company; that the Boxwell Service Company was indebted to the Lion Oil Company to the amount of $4,528.25, and to other creditors in the sum of $3,953.60, besides owing rent to Palmer, all of which it was then unable to pay. In this condition the Oil Company and the Boxwell Service Company entered into a written contract whereby the business of the Boxwell Company was turned over to the Oil Company, to operate and manage during the unexpired term of the Palmer lease, November 15, 1927, with the agreement that the net profits of the operation of the filling station, if there were any, were to be applied to the payment of the existing debts of the Boxwell Company, and when the debts were paid the property and business of the filling station were to be returned to the Boxwell Service Company; that the Oil Company went into possession and operated the business until June 2, 1926, at a loss to the Oil Company of $1,504.39. Because of this loss the Oil Com-

pany concluded to abandon the further operation of the business and to return the same to the Boxwell Service Company, and so informed Boxwell and Palmer, the landlord. Thereupon by the consent of all the interested parties, the lease to the land on which the filling station stood was, as well as the contract between the Oil Company and the Boxwell Company, canceled and a new lease made by Palmer to the Oil Company; that thereafter the Oil Company made improvements upon the property and paid for them and started operating the station in its own name, and the Boxwell Company gave to the Oil Company a note dated December 14, 1925, for the amount of its indebtedness to the Oil Company, and secured the same by a chattel mortgage upon the filling station property. This mortgage was foreclosed and the property sold to the Oil Company for the amount due on the note.

There is no contention that Boxwell personally ever owned the filling station. Such fact was well known to Thorsen, because when the business of the filling station was originally operated by the Standard Tire Service Company, both Thorsen and Boxwell were stockholders in that company. Both Boxwell and Thorsen were officers of that company. Thorsen thereafter sold his stock in the Standard Company to Boxwell. From the evidence it is clear that Boxwell personally never owned the property of the Boxwell Service Company and the title thereto, at the time of the Oil Company's operation of it, remained in the Boxwell Service Company and that the purpose of such operation was from the profits anticipated but not made therefrom to pay the existing indebtedness from the Boxwell Company to the Oil Company.

As Boxwell the individual was in no wise connected with the matters involved in this litigation he is in no position to invoke the Bulk Sales law, Cahill's St. ch. 121a, in the transactions between the Boxwell Company and the Oil Company. There was never any in-

debtedness existing between Boxwell personally and the Oil Company. The transactions involved in this litigation were between the two corporations and no one else. Boxwell personally has no standing to invoke the Bulk Sales Act, as he was not a creditor of the Boxwell Company when the sale challenged was made. As held in *Lawndale Sash & Door Co. v. West Side Trust & Savings Bank,* 207 Ill. App. 3, the Bulk Sales Act has no application where a person is not a creditor at the time of the sale of the business of the corporation concerned. As shown by the record in this case, neither Boxwell nor Thorsen has any standing in the instant case to challenge or impugn any dealing or transaction between the Boxwell Service Company and the Lion Oil Company. When the garnishee case was commenced the garnishee Lion Oil Company was not indebted to Boxwell the individual on any account whatsoever.

For the reasons heretofore given in this opinion the judgment of the municipal court is affirmed.

*Affirmed.*

WILSON and TAYLOR, JJ., concur.